[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of the marriage brought by the plaintiff wife against the defendant husband.
The parties were married in New York in the United States in August of 1985. There is one child issue of this marriage born April 14, 1987, named Nadia Adnan Al-Katib. No other minor children have been born of this marriage.
The parties separated in March, 1989, and this action was brought along with a request for ex parte relief from abuse dated March 22d 1989.
Both parties have lived in this state for more than one year prior to the bringing of this action. Neither party has been the recipient of relief from any local, state or governmental agency.
Plaintiff is 36 years of age and the defendant is 46 years of age. Both are college graduates with the plaintiff having completed a fifth year of college education.
The defendant at the time of the marriage was working as a journalist for the Gulf News Agency with his office located at the United Nations Building in New York. He was also involved in the real estate business and working as a freelance journalist. (See Exhibit M.)
The plaintiff also worked off and on for the Gulf News Agency as a typist of transcripts. She thereafter worked as a CT Page 2233 translator in French and Italian. At the present time, the plaintiff is working as a teacher in Connecticut with earnings of a gross of $607.36 a week and the net of $333.10.
The defendant's present occupation is unclear. He was still at his office in October of 1990 when the plaintiff called him there. He had written a letter to both counsel in July in which he said he was leaving the country in September of 1990 and that he had sold one of his assets, the Indiana commercial property. In view of the plaintiff's reaching him by phone in October of 1990 at the UN, it would appear that he has not carried out at least part of his plans as outlined in his letter of July of 1990. The stationary also gives as the defendant's office address the same address he gave for the Gulf News Agency in exhibit M. (See exhibit N.)
The defendant's failure to appear at the trial and also to file a financial affidavit after October of 1989 makes it difficult for the court to determine his actual income. The evidence does establish to the court's satisfaction, however, his earning capacity at a minimum of $60,000.00. This is based on the following evidence.
1. Two personal financial statements, one in 1986 and one in March of 1989 (exhibits F and M) in which his income from employment by Gulf News Agency is given at $60,000.00 and from rentals in exhibit M from real estate at $35,000.00.
2. Deposits in the Union Trust Bank in January and February of 1989 totaling $22,642.00 for two months — at a time when he was presumably not employed by Gulf News Agency according to his testimony before Judge Hauser. (See exhibit J, page 32.)
3. The apparent contradiction in his testimony of June, 1989 before Judge Hauser (exhibit J, page 32) that he had been fired two years before by Gulf News Agency and his statement in exhibit M dated March, 1989, that his employer was the Gulf News Agency.
4. In exhibit M, the defendant also gives, as his business address, the Gulf News Agency at the same suite in the press agent area of the United Nations which he gave as his office in exhibit N dated July, 1990.
The defendant failed to appear for the trial. His only contact with the court was a letter, exhibit N, to counsel for both parties stating his intention in July of 1990 to leave the country in September of 1990. His counsel, whom he asked not to represent him but whose motion to withdraw was denied, CT Page 2234 wrote the defendant at his last known residence in Stamford, 83 Cullodan Road, and at his office at the U.N. in New York, as set forth in exhibit N, telling the defendant of the upcoming trial and requesting the defendant to get in touch with him in order to prepare a defense. There was no response.
The court finds, therefore, that the defendant has deliberately failed to appear for the trial after having been given adequate notice under all the circumstances.
Following their marriage, the parties lived in Stamford in a house owned by the defendant on Oak Lawn Avenue. The defendant had purchased this house after selling another house on Lillian Street, a four family house. The Oak Lawn house was a single family house. Thereafter, the defendant sold the Oak Lawn Avenue house and bought a two family house on Rock Spring Road. The parties lived in one apartment in that house until February of 1988 when they moved to a house on Culloden Road in Stamford, which the defendant appears to have owned since 1980. (See exhibit M.) The defendant sold both the Oak Lawn Avenue house in 1986 and the Rock Spring house in 1988, netting from the sale of both houses $435,045.27. He used part of the proceeds of the sale of the Rock Spring Road house to purchase a shopping center in Indiana. In a financial affidavit dated October 2d 1989, he recites income from the shopping center of $110,000.00 a year as annual rental.
The Cullodan Road house, where the parties lived at the time of the beginning of this action, is a two family house with an attic apartment. At the time that the defendant was ordered to vacate the marital home, he moved to the attic apartment and the plaintiff remained in the second floor apartment. Following the defendant's move to the third floor, the plaintiff moved out with her daughter to a motel claiming that her husband had threatened to burn the house down with all of them in it. Thereafter, the plaintiff moved to a shelter, an apartment in Fairfield and presently another apartment at an address which she does not wish to be divulged to her husband but is in a sealed envelope in the file.
The problems with the marriage seemed to have surfaced in 1988 when the plaintiff applied for relief from abuse. No further action was taken by her however until March of 1989 when she again applied for relief from abuse and at the same time started the divorce action. Her complaints were of threats and some violence on the part of the defendant and in particular threats by him to take the child away and/or to kill them both.
The plaintiff seems to believe that the problems began with the birth of the child, Nadia, which seemed to trigger her CT Page 2235 fear that he would take the child back to Iraq. In any event, following the beginning of the divorce action the problems of custody, support and visitation became a difficult ones. The court ordered pendente lite support of $100.00 per week and also granted custody to the plaintiff with supervised visitation to the defendant. For whatever reason, the visitation did not work out too well, partly because the plaintiff first moved away without revealing her address and then when the visitation was agreed to by her and the defendant as recommended by the Family Relations officer she still insisted on following the defendant. It seemed to have been working in the spring of 1990 but the defendant failed to visit after June of that year and he has not visited since down to the date of the trial.
Since he had stated in his letter of July of 1989 that he intends to go back to Iraq and he has made himself unavailable to the court, the court has no choice but to order sole custody of the child, Nadia, to the plaintiff. As far as the defendant's right to visit is concerned, the court would order that he have reasonable visitation to be established once he comes within the court's jurisdiction and makes application for visitation.
The major questions left concern support and alimony and distribution of assets. We have discussed the earnings of the two parties previously. The only assets seem to be those of the defendant's who at the time of the trial at least had title to the Culloden Road house and may have had title also to the Indiana shopping center. He may have sold that as he said he had but there is no evidence to establish that fact. He did evaluate that at $800,000.00 with a mortgage of $600,000.00 giving him an equity of $200,000.00 in his various financial statements. Assuming he did sell it, the court will expect that he received at least $100,000.00 from the sale. The Culloden Road house, on the other hand, is under foreclosure and the rent was ordered paid to Mr. French's trustee account. Mr. French is to make an accounting once he receives this decision, and the court will then order the amount in question distributed.
The defendant owned two houses when he came into the marriage. The plaintiff had no assets or liabilities except perhaps a car. The plaintiff did help the defendant prepare the houses he sold, including the first one, the Lillian Street house, and the Oak Lawn house and the Rock Spring house. She also cleaned up and rehabilitated the Culloden Road house after it was badly damaged by the bursting of its pipes when the defendant failed to turn on the heat. She also handled the discussion with the brokers in the showing of the various houses. CT Page 2236
In addition her testimony which was not contradicted was that she used all of her earnings to pay for the household expenses during the time that the defendant was presumably earning at least $60,000.00 a year with Gulf News Agency. She also had a child during that period and took care of the child and the house and in addition once she had recuperated from the childbirth went back to work.
It would appear that the plaintiff has little opportunity to obtain future assets. Her working is limited, also, because of the need to take care of the child so that even when she does work her income is reduced by the amount necessary to provide for the child's care. The defendant on the other hand has apparently had considerable experience in buying and selling real estate. His testimony before Judge Hauser (Exhibit J) indicated that as well as his lack of candor in replying to questions about his activities. The very fact that during the course of the marriage he bought two houses and sold three while at the same time buying a shopping center and a store in Texas is some indication of the extent of his dealings in real estate.
Having considered all of the factors enumerated in Connecticut General Statutes 46b-81 and 46b-82, the court makes the following findings and orders.
1. The parties were married in New York City on August 21, 1985.
2. Both parties have resided continuously in the state of Connecticut for more than one year next to the date of the complaint.
3. There is one minor child issue of this marriage whose name is Nadia Adnan Al-Katib born on April 4, 1987 and there are no other minor children born of this marriage.
4. Neither of the parties has been the recipient of public assistance either from the city, state, or federal government.
5. The marriage of the parties has broken down irretrievably and there is no hope of reconciliation, and it is hereby dissolved.
6. Sole custody of the minor child, Nadia, is granted to the plaintiff with visitation of the defendant as follows:
 a. When the defendant returns to the jurisdiction of the court and makes an application to obtain visitation, he may be heard and visitation at that time may be CT Page 2237 ordered. Until then, however, there shall be no visitation by the defendant.
7. The defendant shall pay the plaintiff the sum of $200.00 per week for the support of Nadia. The first payment shall be due a week after the entry of this judgment. Until then the pendente lite order shall continue to be in effect. (See computation of support order using the guidelines attached to this memorandum.)
8. The defendant shall pay the plaintiff One ($1.00) Dollar a year in alimony until her death, remarriage, or cohabitation, and the sum of $50,000.00 as lump sum alimony payable within thirty (30) days of the entry of this judgment.
9. The defendant is enjoined from removing Nadia Al-Katib from the United States and obtaining a passport for her. A copy of this order is to be filed with the United States Department of Immigration and Naturalization Service and the Passport Agency and the Office of Citizenship Appeals and Legal Assistance of the United States Department of State.
10. The plaintiff, Jean Lafran Al-Katib is released from all restrictions as to the removal of Nadia from the United States and is entitled to the return of Nadia Al-Katib's passport from the office of Tierney and Whelan.
11. The defendant is to pay the plaintiff, as a contribution to counsel fees, $12,000.00 which sum is due in full upon the entry of this order.
12. The defendant is to pay the plaintiff wife the sum of $23,815.00 as arrears due from the pendente lite support order as of December 5, 1990 and also to pay any arrears which have not been paid since December 5, 1990 to the date of the entry of this judgment.
13. The defendant will pay for all sums and hold the wife harmless from any claims, demands, debts, penalties, and liabilities arising out of a joint tax return filed by the parties for 1987.
14. The defendant is to pay for and hold the wife harmless from the first three debts listed on the plaintiff's financial affidavit, to wit: Community Health Care — $290.00; Stamford Anesthetical Association — $380.00; and St. Joseph's Hospital — $2,198.00. CT Page 2238
15. The defendant is to pay for and hold the wife harmless from any and all expenses incurred by him in her name, his name, or joint names for which the wife may or can be held responsible for under C.G.S. 46b-37.
16. All personal property, furniture and fixtures now in the possession of the plaintiff wife will become and remain her sole and exclusive property free from any claim whatsoever by the defendant husband.
17. The assets listed in the plaintiff's financial affidavit dated December 5, 1990 shall become and remain her sole and exclusive property free from any claim whatsoever from the defendant husband.
18. All sums of money from the defendant's rents paid to Attorney Philip French as trustee from July 1, 1989 until the date hereof shall be accounted for by Mr. French to the Superior Court within thirty (30) days from the date of the Memorandum of Decision. The Superior Court shall review the accounting and, upon its approval, order that Philip French, Esquire, pay said sum to the plaintiff wife in reduction of the arrears set forth above.
19. The plaintiff wife shall maintain insurance, medical and hospital and dental insurance if available from her employment for the benefit of the minor child. She shall also be responsible for any medical or hospital expenses incurred by the minor child which are not covered by insurance.
20. The defendant was not present in the courtroom and has not, signed any withholding of wages or advisement of rights form and his employment appears to have been in New York. Consequently, there is no basis for issuing a wage execution at this time. Once he comes within the court's jurisdiction, this matter may be reviewed.
21. The plaintiff's request that her maiden name, Jean Laffan, be restored is so ordered.
Judgment may enter in accordance with the foregoing.
MARGARET C. DRISCOLL STATE TRIAL REFEREE